UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JAMEELA GROSS,<br><br>Defendant | Criminal No.  24cr10196<br><br>Violation:<br><br>Count One: Wire Fraud<br>(18 U.S.C. § 1343)<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c)) |

INFORMATION

At all times relevant to this Information:

General Allegations

1. Defendant JAMEELA GROSS ("GROSS") was a resident of Massachusetts.

2. Prestamos CDFI, LLC ("Prestamos") was a financial institution based in Arizona that facilitated small-business lending.

3. South Shore Bank was a financial institution based in Massachusetts.

4. The United States Small Business Administration ("SBA") was an agency of the executive branch of the United States government. The mission of the SBA was to maintain and strengthen the nation's economy by enabling the establishment and viability of small businesses and by assisting in the economic recovery of communities after disasters. As part of this effort, the SBA enabled and provided for loans, guaranteed by the government, through banks, credit unions, and other lenders.

The CARES Act and the Paycheck Protection Program

5.	The Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 to provide emergency financial assistance to Americans suffering economic harm as a result of the COVID-19 pandemic. Among other things, the CARES Act provided funding for forgivable loans to small businesses for job retention and certain other expenses through the Paycheck Protection Program ("PPP").

6.	PPP loans were required to be used by the business on certain permissible expense, namely, payroll costs, interest on mortgages, rent, and utilities. The PPP allowed the interest and principal on the PPP loan to be entirely forgiven if the business spent the loan proceeds on these expenses within a designated period of time and used at least a minimum amount of the PPP loan proceeds toward payroll expenses.

7.	To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. One such certification required the applicant to affirm that "[t]he [PPP loan] funds w[ould] be used to retain workers and maintain payroll; or make payments for mortgage interest, rent, utilities, covered operations expenditures, covered property damage costs, covered supplier costs, and covered worker protection expenditures as specified under the [PPP] Rules." The applicant (through its authorized representative) was also required to acknowledge that "I understand that if the funds are used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud." In the PPP loan application, the applicant was also required to state, among other things, its (a) average monthly payroll expenses and (b) number of

employees. Lenders used these figures to calculate the amount of money the small business was eligible to receive under the PPP. The applicant was also required to provide documentation showing its payroll expenses.

8.    Participating financial institutions, including Prestamos, received and processed business's PPP loan applications. If a PPP loan application was approved, the participating financial institution would fund the PPP loan using its own monies, which were guaranteed by the SBA.

### Scheme to Defraud

9.    Between April and May 2021, in the District of Massachusetts, and elsewhere, GROSS devised a scheme to defraud and fraudulently obtain pandemic relief funds by filing a false and fraudulent PPP loan application for her purported photography company (the "company"), which resulted in GROSS receiving $18,750. GROSS thereafter misused the loan proceeds in ways that were not connected to the company's payroll, utilities, rent, or mortgage payments.

10.    On or about April 14, 2021, GROSS electronically submitted a PPP loan application to Prestamos that contained false statements and falsified tax documents. GROSS' PPP loan application claimed that she was the sole owner and employee of a company established in 2020 located at an address in Dorchester Center, Massachusetts, and that the company's gross income from 2020 was $90,000. As part of her application, GROSS submitted a falsified Schedule C for the 2020 tax year that bore GROSS' name and Social Security number. The Schedule C claimed that GROSS' principal business was "Photography Studios, Portrait" and had a 2020 gross income of $90,000, expenses including advertising in the amount of $25,000 and utilities in the amount of $25,000, resulting in a net profit of $40,000.

11. In fact, none of the IRS records filed under GROSS' Social Security number for tax year 2020 identify any photography business; the Schedule C that GROSS submitted with her PPP application was not part of her 2020 tax return; and the profits from her purported photography business that GROSS listed in her PPP application were not mentioned in her 2020 Individual Tax Return Form 1040.

12. In reliance on GROSS' PPP application, Prestamos approved the loan, and on or about May 11, 2021, the loan amount of $18,750 was disbursed into GROSS' South Shore Bank account.

13. On or about May 12, 2021 (the day after the $18,750 PPP loan was disbursed into GROSS' South Shore Bank account), GROSS withdrew $17,287 in cash - nearly all of the PPP loan proceeds - from a South Shore Bank branch location in Quincy, Massachusetts. Later that same day, GROSS withdrew an additional $500 from her South Shore Bank account from two different ATMs in Avon, Massachusetts and Brockton, Massachusetts. In addition, GROSS transferred $600 to two CashApp users. These uses of the PPP loan proceeds were not business-related.

14. On or about February 17, 2021 (approximately two months before GROSS filed her PPP application), law enforcement executed a search warrant at the Dorchester Center address listed in GROSS' PPP application as the company's business address. During the search, no evidence of a photography studio was observed.

## COUNT ONE
## Wire Fraud
## (18 U.S.C. § 1343)

The Acting United States Attorney charges:

15. The Acting United States Attorney re-alleges and incorporates by reference paragraphs 1-14 of this Information.

16. Between April and May 2021, in the District of Massachusetts, and elsewhere, the defendant,

## JAMEELA GROSS,

having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing the scheme to defraud, as set forth below:

| Count | Approximate Date | Description |
|---|---|---|
| 1 | April 14, 2021 | Prestamos PPP Application electronically submitted in Massachusetts and routed interstate through Prestamos' servers located outside of Massachusetts |

All in violation of Title 18, United State Code, Section 1343.

## FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

The Acting United States Attorney further alleges:

17. Upon conviction of the offense in violation of Title 18, United States Code, Section 1343, set forth in Count One, the defendant,

JAMEELA GROSS,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offense. The property to be forfeited includes, but is not limited to, the following asset:

    a. $18,750, to be entered in the form of a forfeiture money judgment.

18. If any of the property described in Paragraph 17, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendant --

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with, a third party;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property described in Paragraph 17 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

                                        JOSHUA S. LEVY
                                        Acting United States Attorney

                      By:
                                        Sarah Hoefle
                                        Lucy Sun
                                        Assistant U.S. Attorneys

Date: July 8, 2024